IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LUIS ALBERTO RIVERA-DÍAZ,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 05-2089 (PG)
(CRIMINAL 04-0103 (PG))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I. INTRODUCTION

On October 13, 2005, Petitioner, Luis Alberto Rivera Díaz, filed a petition to vacate or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner asserts that his appointed counsel was ineffective by failing to explain and challenge the previously negotiated two-level enhancement for abuse of a position of trust, imposed at sentencing. Rivera-Díaz also alleges that because he was in a different location, counsel delivered his file after the time to file a notice of appeal had elapsed. The government submits that petitioner stipulated the two-level enhancement and the waiver of his right to appeal.

II. PROCEDURAL BACKGROUND

"On August 5, 2004, Luis Alberto Rivera Díaz plead guilty to count one of the indictment in Criminal 04-103, which charged a violation of Title 21, United States Code, Section 846, which was a conspiracy with intent to distribute ten

CIVIL 05-2089 (PG)  2
(CRIMINAL 04-0103 (PG))

kilograms of cocaine." (Docket No. 183, Sentencing Hearing, Tr. at 5, ll. 21-25.) Based on a total offense level of 29 and a criminal history category of one, the petitioner received a sentence of 87 months, with supervised release of five years and a special monetary assessment in the amount of $100 was also imposed. (Id. at 6, ll. 12-25; at 8, ll. 3-4.) Petitioner claims defense counsel pressured him into signing the agreement even though he did not understand the terms that he was agreeing to.

## III.  FACTS OF THE CASE

At all times material to the indictment Luis Alberto Rivera Díaz was employed by Ponce Airline Services (hereinafter "PAS") at the Luis Muñoz Marín International Airport (hereinafter "LMMIA"). From on or about July 23, 2003, to on or about November 11, 2003, in the district of Puerto Rico, and elsewhere, and within the jurisdiction of this court, the defendant Rivera-Díaz, did knowingly, intentionally, and unlawfully conspire and agree with Pedro Villegas-López, Wanda Rodríguez, Saulo Hernández-Morales, Kellnum Landrau-López, Melvin Popart-Orengo (not indicted herein) and with diverse other persons known and unknown, to possess with intent to distribute five kilograms or more of cocaine. (Docket No. 2, at 2; Docket No. 197, Transcript of Change of Plea Hearing, at 19, ll. 5-19.)

On or about August 30, 2003, Luis A. Rivera along with co-defendant Pedro Villegas López and Wanda Rodríguez, assisted in the transportation of 10

CIVIL 05-2089 (PG)                                        3
(CRIMINAL 04-0103 (PG))

kilograms of purported cocaine from LMMIA in San Juan, Puerto Rico to Philadelphia, Pennsylvania through US Airways Flight No. 126. (Id. at 5, ¶ 2; at 19, ll. 20-25.)

In the early morning of August 30, 2003, a DEA confidential informant provided Pedro Villegas-López and Wanda Rodríguez with a piece of luggage containing what they believed to be ten (10) kilograms of cocaine. The piece of drug laden luggage was placed in the trunk of Wanda Rodríguez' vehicle. DEA agents and the confidential informant followed Wanda Rodríguez and Pedro Villegas-López to the LMMIA where they entered the airport's parking structure. In the parking structure Wanda Rodríguez and Pedro Villegas-López provided the petitioner, Rivera -Díaz, with the drug laden piece of luggage. Rivera-Díaz placed the piece of luggage in his vehicle, then left the area and parked his vehicle in a different level of the parking structure. (Docket No. 197, Tr. at 20, ll. 2-20.) Rivera-Díaz then exited the parking lot with the drug laden luggage. Petitioner bypassed all security checkpoints and introduced the drug laden piece of luggage into the LMMIA terminal area by using his employee access car. (Id. at 20, ll. 21-25.) Once inside the LMMIA Wanda Rodríguez placed the drug laden piece of luggage in the luggage cart for US Airways Flight No. 126. The drug laden piece of luggage was placed in the belly of U.S. Airways Flight No. 126 with destination to Philadelphia, PA, where it was intercepted by the DEA. (Id. at 21, ll. 1-10.)

CIVIL 05-2089 (PG)                                             4
(CRIMINAL 04-0103 (PG))

In the plea agreement, the petitioner admitted to the fact that the penalty for the offense charged in count one is not less than 10 years or more than life. Additionally, the court could impose a term of supervised release of at least five years and could impose a fine of up to $4,000,000. The court was required to impose a mandatory penalty assessment of $100 per count, to be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013. The petitioner willingly agreed that the sentence would be left entirely to the sound discretion of the court in accordance with the Sentencing Guidelines, 18 U.S.C. § 3551 (hereinafter "Guidelines"). (Docket No. 86, at 2, ¶¶ 2 & 3.)

The government and the petitioner agreed that he would be held accountable for 10 kilograms of cocaine for purposes of determining the applicable base offense level, which would result in a base offense level as listed in USSG 2D1.1 (c)(3) as level 32. (Id. at 3, ¶ 6a.) Since the petitioner complied with the requirements of the safety valve provisions pursuant to guidelines sections 5C1.2, 2D1.1(b)(9) and 18 U.S.C. § 3553(f), a two level decrease was warranted. Due to petitioner's abuse of position of trust, a two level increase was warranted pursuant to guideline 3B1.3. Due to the fact that petitioner accepted responsibility for his offense conduct, a three level decrease was warranted, pursuant to guideline 3E1.1(b). (Docket No. 183, at 6, ll. 1-10.) In exchange for the terms and conditions of the plea agreement the petitioner agreed to waive all

CIVIL 05-2089 (PG)                                            5
(CRIMINAL 04-0103 (PG))

rights under <u>Blakely v. Washington</u>, 542 U.S. 296 (2004).  This means that the petitioner agreed to have his sentence determined under the Sentencing Guidelines.  Thus, the petitioner waived his right to allege that the sentence given to him was in excess of the maximum authorized by law. (Docket No. 86, at 4, ¶ 7.) The petitioner's allegation that he was sentenced in excess of the maximum authorized by law is unfounded due to the fact that the government recommended he be sentenced to the lower end of the applicable guideline range.  The guideline imprisonment range in this particular offense is from 87 to 108 months.  Petitioner was sentenced to 87 months, which is the minimum in this particular case.  The petitioner now alleges that the guilty plea he consented to is invalid due to the fact that he did not understand the terms that he was agreeing to.

## IV. STANDARD OF REVIEW & DISCUSSION

"In the usual case, the crux of the inquiry is whether the plea was knowing, voluntary, and intelligent in conformity with Rule 11." <u>United States v. Martínez-Molina</u>, 64 F.3d 719, 732 (1st Cir. 1995); <u>see</u> <u>United States v. Cotal-Crespo</u>, 47 F.3d 1, 3 (1st Cir. 1995).  It is an "accepted, unchalleng[e]able principle that a [valid] plea of guilty waives all but jurisdictional defenses." <u>United States v. Chantal</u>, 902 F.2d 1018, 1020 (1st Cir. 1990) (citing <u>Gioiosa v. United States</u>, 684 F.2d 176, 179 (1st Cir. 1982)).  And, a guilty plea does not preclude a defendant from subsequently asserting that his plea was involuntary (and invalid) because

CIVIL 05-2089 (PG)                            6
(CRIMINAL 04-0103 (PG))

defense counsel's representation fell below the minimum required by the Sixth Amendment. Acha v. United States, 910 F.2d 28, 30 (1st Cir. 1990). The standard of review for determining effective counsel is based on the Strickland test. Strickland v. Washington, 466 U.S. 668 (1984). "To meet the first part of the *Strickland* test, a counseled guilty plea must be based on advice which '[i]s within the range of competence demanded of attorneys in criminal cases.'" López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990) (quoting Hill v. Lockhart, 474 U.S. 52, 56 (1985)). Once a defendant shows that counsel's advice fell below this standard, he must then show that he was prejudiced by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. at 59. The leading case on this issue, Strickland v. Washington, discusses how a court should analyze an ineffective counsel claim:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular

CIVIL 05-2089 (PG)                              7
(CRIMINAL 04-0103 (PG))

> case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.
>
> . . .
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

<u>Strickland v. Washington</u>, 466 U.S. at 690-91.

The petitioner's claim that he has been denied the right to appeal lacks any basis. By entering into a plea agreement, petitioner surrendered certain rights. The plea agreement stipulates that if the court accepted the agreement and sentence according to its terms and conditions then he would waive and surrender his rights to appeal the judgment in the case. (Docket No. 86, at 8, ¶ 17.) <u>See,</u>

CIVIL 05-2089 (PG)                                      8
(CRIMINAL 04-0103 (PG))

e.g., United States v. Soto-Cruz, 449 F.3d 258, 260-61 (1st Cir. 2006). On page fifteen, from line five to line fourteen of the Transcript for Change of Plea, the court reiterates the consequences of entering the plea agreement and petitioner consents. (Docket No. 197.) On page ten, line fourteen to line 20 of the Transcript for Change of Plea, the judge explains the sentencing guidelines calculations, including the previously negotiated two-level enhancement for abuse of a position of trust. In response to whether petitioner understands the descriptions of the sentencing guidelines petitioner responds in the affirmative. On page thirteen, line sixteen of the Transcript for Change of Plea, the judge inquires as to the effective legal counsel rendered by petitioner's attorney. Petitioner affirms he is satisfied with his representation. On page eight, line seventeen to nineteen (19), the judge inquires as to whether anyone has forced petitioner to plead guilty. Petitioner responds in the negative. (Docket No. 197.) The fact that petitioner willingly consented to all the terms of the plea agreement and during the proceedings before the court affirmed that he understood the ramifications of the plea agreement, renders his claim of ineffective counsel unfounded.

Following the Strickland test, petitioner fails to show how any of the issues raised would have been decided in his favor or that the outcome of the trial would have been different but for his counsel's failure to raise these issues. Strickland

CIVIL 05-2089 (PG)                                  9
(CRIMINAL 04-0103 (PG))

v. Washington, 466 U.S. at 714.  Similarly, petitioner fails to show any prejudice resulting from the alleged error of not understanding the two-level enhancement in sentencing.

   Petitioner does not meet the Strickland test requirement that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial.

      Petitioner's allegation that counsel delivered his file after the time to file a notice for appeal had elapsed is academic since Rivera-Díaz has waived his right to appeal in the plea agreement.  I therefore recommend that the court deny petitioner's motion under 28 U.S.C. § 2255.

      Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14,

CIVIL 05-2089 (PG)                              10
(CRIMINAL 04-0103 (PG))

(1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 21st day of December, 2006.

                                                S/ JUSTO ARENAS
                                Chief United States Magistrate Judge